IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KENNETH MITCHELL, | )( | Civil Action No.: 4:18cv-4052 |
| | )( | (Jury) |
| *Plaintiff,* | )( | |
| | )( | |
| V. | )( | |
| | )( | |
| CITY OF HOUSTON, TEXAS; | )( | |
| POLICE CHIEF ART ACEVEDO; | )( | |
| ASST. POLICE CHIEF TROY FINNER; and | )( | |
| POLICE CAPTAIN D. EDWARDS; | )( | |
| | )( | |
| *Defendants.* | )( | |

**PLAINTIFF'S 2nd AMENDED[1] ORIGINAL COMPLAINT**

**TO THE HONORABLE ANDREW S. HANEN:**

**NOW COMES** Plaintiff Kenneth Mitchell amending his complaint complaining of defendants City of Houston, Police Chief Art Acevedo, Executive Assistant Police Chief Troy Finner, and Police Captain D. Edwards and for cause of action would show unto the Court the following:

**INTRODUCTION**

1. City of Houston's Police Chief Art Acevedo, Executive Assistant Chief Troy Finner, and Captain Edwards retaliated, under the color of law, against the police patrol officer Kenneth Mitchell, directly and through their agents, against Kenneth for statements made in an email of public safety concern regarding an area where Kenneth grew up, had personal business, and had many friend and relatives residing. The Plaintiff first made aware to chain of command,

---

[1] Plaintiff amends "as a matter of course" pursuant to FRCP 15(a)(1)(B).

1

not in the scope of his duties as a patrol officer, about a strategic decision the upper management were making to close down a substation, to an influential citizen via email who was the former chairman of a local public safety committee and then president of the local chambers of commerce. The citizen forwarded the email to the nearby Harris County Constable, Harris County Sheriff's District Commander, Mall Manager (over saw a security department that employed off-duty HPD), and head of local hospital security (also employed off-duty HPD). The Defendant caused Kenneth to be first demoted from patrol officer to dispatcher and then relieved Kenneth of duty.

## PARTIES AND SERVICE

2. Plaintiff, Kenneth Mitchell, is an individual residing in Harris County, Texas.

3. Defendant City of Houston, is a municipal entity, located in Harris County, Texas, and operates the Houston Police Department. The City of Houston has appeared in this case.

4. Defendant Houston Police Chief Art Acevedo (Chief Acevedo) is being sued individually and has appeared in this case.

5. Defendant Houston Assistant Police Chief Troy Finner (Assistant Chief Finner) is sued individually and can be served with process at 1200 Travis Street, Houston, Texas 77012 or wherever he is found.

6. Defendant Houston Police Captain D. Edwards (Captain Edwards) is sued individually and can be served with process at 1200 Travis Street, Houston, Texas 77012 or wherever he is found.

## JURISDICTION AND VENUE

7. The jurisdiction of this lawsuit is proper in the United States District Court for the Southern District of Texas – Houston Division pursuant to 28 U.S.C. § 1331 and 1343 and supplemental jurisdiction pursuant to 28 U.S.C. §1367.

8. Venue is proper in the Houston Division of the Southern District of Texas as the events giving rise to the cause of action in this lawsuit occurred in Harris County within the U.S. Southern District of Texas and within the parameters of the Houston Division. Therefore, venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391.

**FACTS**

9. At all times material hereto, Defendant City of Houston Police Department a government organization was headed by Chief Acevedo who acted under the color of law.

10. Willowbrook is an isolated neighborhood, annexed by Houston in 1997, in the far Northwest corner of Houston, Texas surrounded by unincorporated Harris County-an island of Houston so to speak.

11. Since 1988 when Kenneth was six years old he and his family did most of their shopping and entertainment activities in Willowbrook and especially at the Willowbrook Mall.

12. Kenneth lived in the area only leaving for 3 years between 2001-2004.

13. After Kenneth became a police officer he eventually asked for, and received, assignment in the Willowbrook area to be close to his family and friends.

14. Kenneth's wife goes to shop in the Willowbrook frequently. She gets her hair done by her sister-in-law at Dulce Ramirez de Sequeira at 6982 FM 1960 West Houston, TX 77069 where she rents a chair.

15. Kenneth's sister-in-law Diana Sequeira had a gun pointed at her and her boyfriend at the Willowbrook Mall on Black Friday in 2010 or 2011.

16. Kenneth's sister-in-law Diana Sequeira made a criminal mischief report in Willowbrook regarding her vehicle in approximately 2005.

17. Kenneth and his wife had a membership at Lifetime Fitness in Willowbrook at 7717 Willow Chase Blvd., Houston, TX 77070.

18. Kenneth often traveled to his mother-in-law's house where his wife would be for lunch in Willowbrook at 4714 Theall Road, Houston, TX 77066.

19. Since Kenneth became a lawyer he has had his law office near Willowbrook.

20. Kenneth, his wife and mother-in-law all shop and entertain themselves in Willowbrook.

21. Kenneth's residence is at 20418 Weald Way St Spring, TX 77338 near Willowbrook.

22. For several years up until April 2018 Kenneth was employed as a police officer by the City of Houston under the supervision of Chief Art Acevedo working at the Willowbook storefront.

23. During his time as a police officer it was not a duty of Kenneth's to send emails to citizens, analyze police department reorganization, determine crime trend or police resource needs, or decide whether a Houston police storefront fronts should close or remain open.

23. Sometime in 2017 Chief Acevedo decided to reorganize and create a new division called Northbelt Division and appointed Captain Edwards to command the division.

24. Captain Edwards decided that he would centralize the division in Greenspoint, despite the sprawling area and that Greenspoint and Willowbrook are separated by unincorporated Harris County.

25. Kenneth believed that closing the Willowbrook HPD storefront would increase police response times and thereby decrease safety to the local Willowbrook residents and patrons including his wife, relatives and friends. Kenneth made his opinion by informing his supervisors.

26. March 22, 2018, Kenneth then made contact with Larry Lipton, president of the Northwest Chamber of Commerce which includes the Willowbrook area, who wanted an email from Kenneth to inform him of the situation, so he could advocate to keep officers reporting to the Willowbrook storefront. Kenneth then wrote an email (the Email) with his personal email on his own personal time. See **Exhibit 1.** The email spoke to Kenneth's opinion that safety at Willowbrook would decease

27. Larry Lipton worked earlier that month with Harris County Sheriff's Captain Jay Coons, as reported in the Houston Chronicle, with a plan to decentralize the Sheriff's department for better response in the jurisdiction that separates Willowbrook from Greenspoint.

28. Larry Lipton forwarded the email to the Willowbrook Mall manager that was responsible for a large security detail, Willowbrook Methodist Hospital's Director of Security, Captain Jay Coons, and Harris County Precinct 4 Constable Mark Hermann.

29. Captain Edwards was made aware of the email and eventually found out it was from Kenneth.

30. Captain Edwards then filed, or directed another to file, and Internal Affairs Department complaint against Kenneth for authoring the email.

31. Assistant Chief Finner with the knowledge of Chief Acevedo then ordered Kenneth off patrol and sent to dispatch, a well-known form of punishment.

32. Police Chief Acevedo, Assistant Chief Finner, and Captain Edwards were all aware that the Email constituted protected Free Speech under the 1st Amendment, had an opportunity to stop the retaliation, yet chose to continue with the retaliation.

33. On June 28, 2018 after going through the City of Houston police disciplinary system Kenneth was relieved of duty for authoring the Email.

34. Facing a dishonorable discharge Chief Art Acevedo agreed to allow Kenneth to resign with an honorable discharge, despite violating police disciplinary procedures that resignation during an IAD investigation could not be honorable.

35. During the time from April 3, 2018 to July 12, 2018 Kenneth wanted to speak and write about safety in closing the Willowbrook store front but was worried about more retaliation by the defendants.

36. As a result of the defendants' action Kenneth lost both future and past income, the difference between the retirement of what Kenneth would have received without defendants' actions versus what he would have obtained from HPD retirement, embarrassment, stress, anxiety, past mental anguish including at least anxiety, depression, and embarrassment, future mental anguish, and the loss of health insurance for his family.

## CAUSES OF ACTION

### Freedom Speech

37. Plaintiff reasserts all of the foregoing paragraphs. The First Amendment protects freedom of speech and "the right of the people . . . to petition the government for a redress of

grievances." *U.S. CONST. amend. I.* Retaliation claims under both are analyzed in the same way. *Borough of Duryea v. Guarnieri,* 564 U.S. 379, 389 (2011). A plaintiff must show that "(1) he suffered an adverse employment action; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighs the employer's interest in promoting efficiency in the workplace; and (4) his speech motivated the employer's adverse employment action." *Charles v. Grief,* 522 F.3d 508, 510 n.2 (5th Cir. 2008). To be speaking on a matter of public concern, the employee must speak in his capacity as citizen, not employee. *Connick v. Myers,* 461 U.S. 138, 147 (1983). See also *Branton v. City of Dall.,* 272 F.3d 730, 739 (5th Cir. 2001) (citing *Connick v. Myers*, 461 U.S. 138, 147–48 n.7 (1983)).

**USC Section 1983-Failure to Intervene/Bystander Liability**

38. Plaintiff reasserts all previous paragraphs. Plaintiff asserts that Defendants Acevedo, Finner and Edwards were aware of each others' violations of Kenneth's Free Speech rights, had an opportunity to do something about it, yet failed to do anything. An officer may be liable under § 1983 under a theory of bystander liability where the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). In *Whitley*, this Court acknowledges the theory of bystander liability for excessive force claims. *Whitley*, 726 F.3d at 646; *See Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) (holding that an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983); *Ware v. Reed*, 709 F.2d 345, 353 (5th Cir.1983) (concluding that an "instruction on the defendant's alleged acquiescence in the unconstitutional conduct of other officers should have been given"). Also see *Byrd v.*

*Brishke*, 466 F.2d 6, 11 (7th Cir.1972) (stating that "one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge" and that this responsibility exists "as to nonsupervisory officers who are present at the scene of such summary punishment").

39. Although *Hale* most often applies in the context of excessive force claims, the 5th Circuit recognized that other constitutional violations also may support a theory of bystander liability. *Whitley v. Hanna,* 726 F.3d 631, 646 n. 11 (5th Cir. 2013)(citing *Richie v. Wharton County Sheriff's Dep't Star Team*, No. 12–20014, 2013 WL 616962, at *2 (5th Cir. Feb. 19, 2013)(per curiam) (unpublished)(noting that plaintiff failed to allege facts suggesting that officers "were liable under a theory of bystander liability for failing to prevent ... other member[s] from committing constitutional violations")). Further, the Second Circuit has stated that "law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994). See also, *Byrd v. Brishke,* 466 F.2d 6, 11 (7th Cir. 1972)("we believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge.").

**Ratification by City of Houston/Action of Policymaker Acevedo**

40. Plaintiff reasserts all of the foregoing paragraphs. Plaintiff had his rights violated and was injured due to the polices, practices, customs and procedures of the City of Houston.

41. Chief Acevedo as the head executive of the Houston Police Department is in charge of officer discipline including officer work transfers from patrol duty to dispatch duty and relieving officers of duty. In the alternative Chief Acevedo has designated that authority to Assistant Chief Finner. Since the actions of these policymakers caused Kenneth's civil rights violations the City of Houston is liable.

42. Furthermore, Kenneth went through the official police disciplinary system of the City of Houston the duty of which it is to discipline officers. This activity has been designated such authority by the City of Houston. Therefore, the act of relieving Kenneth of duty for authoring the Email was an act of the City of Houston itself bestowing liability.

## VI. PUNITIVE DAMAGES

43. In addition to the damages set forth above the individual defendants are liable to Kenneth for punitive damages.

## ATTORNEY'S FEES AND COSTS

44. Pursuant to the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988, Plaintiff asserts the right to an award of attorney's fees and costs under its 42 U.S.C. § 1983 pleadings if he prevails.

## JURY DEMAND

45. Plaintiff respectfully demands trial by jury.

## FURTHER RELIEF REQUESTED

46. For these reasons, Plaintiff prays for judgment against Defendants, jointly and severally, for the following:

a. Actual damages;

b.   Pre-judgment and post-judgment interest;

c.   Punitive and exemplary damages against Defendants in an amount to be determined and as allowed by the Court;

d.   Costs of Court; and

e.   Such other and further relief as the Court deems just and equitable including appropriate.

Respectfully Submitted,
Kallinen Law PPLC

/S/ Randall L. Kallinen
Randall L. Kallinen
State Bar of Texas No. 00790995
U.S. Southern District of Texas Bar No.: 19417
511 Broadway Street
Houston, Texas 77012
Telephone:   713.320.3785
FAX:         713.893.6737
E-mail:AttorneyKallinen@aol.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been transmitted to the all counsel appearing in this cause and pro se parties on this the 17th day of December 2018, by filing with the ECF System of the United States District Court for the Southern District of Texas.

/s/ Randall L. Kallinen
Randall L. Kallinen